Tucker, P.
Upon the first question which arises in this case, and which involves the validity of the arrangement of the debt due from Grymes’s estate to Robinson’s estate, made with the defendant Scott, I am of opinion, that Scott being de facto administrator of Robinson, under the appointment of a court of record having jurisdiction of the probate of wills and the granting of administration, any payment made to him by any debtor of that estate, before his authority was superseded, would have been a good payment, and, of course, every irrevocable arrangement made with him by such debtor, would be good and valid against any subsequent administrator. I do not consider a county or hustings court, in relation to the grant of administration, as standing on the same footing with (he ordinary in England. The county court is a court of record, and its judgments or sentences cannot be questioned, collaterally, in other actions, provided it has jurisdiction of the cause. 6 Bac. Abr. Sheriff. M. 2. p. 166. 3 Wils. 345. And this is to be understood as having reference to jurisdiction over the subject matter: foe though it may be that the facts do not give jurisdiction over the particular case, yet if the jurisdiction extends over that class of cases, the judgment cannot be questioned; for then, the question of jurisdiction enters into and becomes an essential part of the judgment of the court. Thus, if a county court were to give judgment of death against a white man, the *132 sheriff' would have no lawful authority to execute him : or, it a court of chancery were to grant probate of a will, it would be ipso facto void, since that court has no jurisdiction in any case of probates. It is held void ipso facto, because no inquiry is necessary to ascertain its invalidity. But where the court has jurisdiction of cases ejusdem generis, its judgment, in any case, is not merely void ; because its invalidity cannot appear without an inquiry into the facts; an inquiry, which the court itself must be presumed to have made, and which will not therefore be permitted to be revived collaterally. Thus, in Prigg v. Adams, 2 Salk. 674. in an action for false imprisonment, the officer justified under a ca. sa. on a judgment in the court of common pleas, upon a verdict for 5 shillings, for a cause of action arising in Bristol: the plaintiff replied an act of parliament erecting a court in Bristol, and declaring that if any person brought any such action in any court at Westminster, and it appeared upon trial to be under 40 shillings, no judgment should be entered upon it, and if entered it should be void: yet the court held it only voidable, and sustained the plea. So, if an action of debt were brought against a resident of Hanover in the county of Henrico, and judgment should be rendered against him, a sheriff could not refuse to levy a ca. sa. issued upon the judgment, nor would he be liable for false imprisonment; for the plaintiff in the action of false imprisonment would not be received, collaterally, to allege that the court had no jurisdiction. Were it otherwise, the whole system of jurisprudence would be subverted : the sheriff would be converted into an appellate tribunal; and instead of the defendant’s being compelled to plead to the jurisdiction at an early stage of the cause, he would be permitted to put it in issue in another case, after the termination of the first. As, therefore, the defendant might have been a resident of Henrico instead of Hanover, and even if not, as he might *133 nevertheless have been suable in Henrico if the cause . . . of action arose there, the judgment of the court is con-elusive upon the point of jurisdiction; and although, in point of fact, the defendant might have been a nonresident, and the cause of action might not have arisen in Henrico, yet the judgment is valid; for the court had general jurisdiction over matters of that description, and the question whether that general jurisdiction embraced the particular case, having been decided by its judgment, can never be again raised, except by a proceeding in error, upon a case properly appearing upon the face of the record.
Such would clearly be the law, in lhe case of a Us contéstala, where both parties appeared, and the defendant either submitted to the jurisdiction, or upon plea it was decided against him. How then is it, where there is a proceeding cxparte, and of course where the party interested, who denies the jurisdiction, was not before the court which assumed it? And here I conceive, as before, that as to all the world except the party interested, whose rights are invaded or are to be affected by the sentence, that sentence is conclusive. Thus, if administration be granted by the county court of Henrico, when the jurisdiction in fact belonged to Hanover, within which county was the mansion house of the intestate, yet no debtor of the estate could be received to plead nc tinques administrator, in bar of an action for the recovery of a debt due to the estate. The greatest confusion and mischief would ensue, if such were the law; for then, wherever delay was desired, every debtor would deny the jurisdiction, and arrest the recovery of a just debt, by embarrassing inquiries as to the decedent’s domicil or the place of his death, or whether the greater part of his lands or estate lay in this or that county. I take it, therefore, to be perfectly clear, that Bassett or Braxton could not have controverted Scott's powers, and that payment to him, or an *134 irrevocable engagement with him, must, consequently, . cj w X t>e sustained as good and valid.
Before I pass to other points, let us see how far other persons claiming administration are bound by the irreguiar grant of a court not having jurisdiction in the very case. Thus, how far was the sheriff of Middlesex concluded by the grant of administration of the hustings court of Richmond, supposing it not to have had jurisdiction in this particular case ? And here observe, that the proceeding in the hustings court having been ex parte instead of inter paries, it could conclude the rights of no person claiming against it. The general court, moreover, having jurisdiction in all cases of administration, any person authorized to take it, whether next of kin, creditor or sheriff, might in that court move for and obtain administration as of right, unless it was excluded by some other court of concurrent jurisdiction. When, therefore, such motion is made, is it competent to arrest the proceeding by shewing that the hustings court had, without jurisdiction, granted administration to another ? I think not. It is admitted, that the order might be repealed by citation or rule upon the party in the hustings court. Of course, no one is concluded by it, and the only question is, by what proceeding it can be rendered inoperative. Now, I think, the principles of law, and the reason and convenience of the thing, all conspire to prove that the court of general jurisdiction, upon application for administration, is not concluded by a grant of administration by a court having no jurisdiction. For it is a universal rule, that no man’s right of action (and such is an application for administration) can be barred or impeded by a proceeding to which he was not a party. And if the general court could not grant administration to the person really entitled to it, because the hustings court, without jurisdiction, had granted it to another, the party entitled would be barred and precluded of his rights by a sentence which he had no opportunity of contesting.
*135 It is objected, however, that thus there might be two ,... , . . , ~ . i-i' administrations. Admitted, ouch a state oí,things may well occur under our law; and this not only where one of the courts granting administration has no jurisdiction, but even where both have jurisdiction. Thus the county court, the circuit superiour court, and the general court, have concurrent jurisdiction. They may all sit on the same day, and each ma.y grant administration to a different creditor, upon application after the lapse of time in such case required by law. Suppose two such concurrent jurisdictions should grant two administrations. It may not be easy to decide how the difficulty of these conflicting rights would be avoided. But where one of the courts has jurisdiction, and the other has not, there can be no reason to doubt, that that which is granted by the court having jurisdiction is valid, and that which emanates from the court having no jurisdiction is, as to the former, a nullity. So, although the latter is first granted, yet upon application to the proper jurisdiction, that jurisdiction must treat as a nullity the intrusion of a tribunal having no jurisdiction. How can it do otherwise ? Shall it acquiesce in the invasion of its own authority and the rights of the applicant, by dismissing him from its forum, and turning him around to the tribunal which has done the wrong, for redress by way of citation ? and this too, when the proceeding had been ex parted Shall it consider itself functus officio, and barred of the right of acting on the subject, by the previous action of a body having no right to act ? I think not. It must, in the nature of things, determine its own jurisdiction. Every court must do so, though if it errs, its judgment will be corrected. And in determining its jurisdiction, if it be alleged that the subject has been concluded, and the powers of the courts of probate exhausted by a previous grant, it must of necessity inquire, whether the court making the grant had jurisdiction to make it; for, the *136 proceeding having been ex parte, the sentence is con- , elusive upon no one. I am therefore of opinion that the grant of administration by the general court was valid ; that that court had a right, and was of necessity obliged, to inquire whether the hustings court of Richmond had jurisdiction; and on ascertaining the negative, it was right in treating the grant of the hustings court as a nullity. From that time, but from that time only, it became null and void, and after payments to Scott would have been invalid.
It is said, however, that debtors might be ignorant of the new grant of administration. It is not necessary now to decide, whether payments made to Scott without actual notice of the revocation of his powers, would have been good. Admitting they would not, and that the grant of the general court was notice to all the world, yet it is not more unreasonable to affect debtors with such notice, than to hold that every person entitled to administration is bound to take notice of an irregular administration. Thus, if A. dies at his mansion house in the county of Wood, and has a debtor in Elizabeth City, the jurisdiction is in Wood county court. Yet if administration be improperly granted in Elizabeth City, it is contended, that the subsequent grant by the proper court is void; that the party applying ought to have known the proceeding in Elizabeth City, and that he is bound by it. I cannot think so. It would be most strange, if a court entitled to act upon a subject should be ousted of its powers, by the unauthorized action of any one of a hundred other courts having no jurisdiction of the subject.
I had anxiously desired to avoid any remarks on this part of the subject, as there is a difference of opinion in the court respecting it. But it is impossible to avoid it, since the action of the court depends essentially on the question. I am happy in being sustained in my views by the decision of the learned judges of the ge *137 neral court, cited in the argument; Ex parte Barker, 2 Leigh 719.
On the merits of the case, I am clearly of opinion, that unless Fisher could shew that Scott had fairly become the purchaser of the debt due to Robinson’s estate, or was in advance to that estate to the amount of the debt, the transaction was such a dealing with the assets as to render the transfer void. The sale of the bonds at so large a discount was itself prima facie a devastavit, and the burden of proof is upon Scott or Fisher, that the necessities of the estate, and not those of the administrator, required the sacrifice. Fisher must have known Scott’s embarrassments. As assignee, he naturally looked to the circumstances of the assignor; and doing so, he must have known his difficulties. Here, then, is a dealer with an administrator—conusant that the claim originally belonged to the intestate’s estate— conusant of its conversion into the form of a private debt to the administrator, and without evidence of its transfer to him by those interested—conusant of the administrator’s great embarrassments—who unites with him in a devastavit of the estate, by discounting paper belonging to it, at the ruinous rate of twenty-five per cent., without evidence, as far as yet appears, of the necessities of the estate requiring such a sacrifice. 1 forbear to comment on the other circumstances which ought to have satisfied Fisher that there was something amiss in the transaction, since it is not necessary. The conversion of the estate debt into a private debt, of which he was aware, was itself a devastavit in law, and the sale of it at a sacrifice was yet more obviously a devastavit in fact. He has enabled the administrator to commit it; and, upon well received doctrines, he must be the loser. Still, as it is possible that Scott may be in advance, and as Fisher will be entitled, in that event, to stand in his shoes, as far as the reimbursement of such advance, I am content to let the cause go back, to give *138 an opportunity for that inquiry. The decree must, iní i. J deed, be in any event reversed, since the injunction should only have been perpetuated as to Fisher, and the bonds and deed of trust should have been delivered over to the sheriff administrator of Robinson, for the benefit of the estate.
Parker, J.
I agree with the president of the court in the opinion he has just delivered, that the grant of administration to Scott by the hustings court of the city of Richmond, was not a void, but only a voidable act. The distinction between the acts of a court having jurisdiction over the subject matter under some circumstances, and those of one which, in no possible state of things, can take jurisdiction over the subject, is a sound and sufficiently intelligible one to guide our judgments in the present case. If, under any circumstances, the hustings court could grant administration to Scott, it had jurisdiction of the subject, and must judge of those circumstances. If it erred in determining that the facts, upon which its power to grant administration in the particular case depended, were sufficiently proved, it was an error to be corrected by some competent authority; but until so corrected, it conferred upon Scott all the powers of a rightful administrator. The analogy attempted to be drawn between the grant of an administration by the ordinary in England, and such grant by our courts of record, is too imperfect to justify us in encountering all the inconveniences and mischiefs which would result from considering the grant here merely void ; and it would be violating well established principles settled in other cases by the english courts themselves,—as the counsel for the appellees have clearly shewn.
I also agree in the opinion, that there was such a dealing with the assets of Robinson’s estate between Scott and Fisher, as to render the transfer of the bonds by *139 the former to the latter, prima facie void. Fisher admits he knew that the claim of Scott on Grymes’s estate origimated in his character of administrator of Robinson. He therefore knew, that there were equities existing in third persons, which ought to have been respected. If Scott was not in advance to the estate, or had not bought the claim from the distributees of Robinson, he could not deal with it, in the manner he did, as his own debt. Or, if the necessities of the estate did not require a sale of the bonds at so large a discount, it was a devastavit in Scott to sell to Fisher. When Fisher bought the bonds for so much less than their value, under the circumstances existing in this case, he took on himself the risk of shewing either that Scott was the real owner of them, or that the necessities of the estate justified the sacrifice. This he has not yet shewn; but I think he ought to have an opportunity of doing so, and that the court ought not to have perpetuated the injunction without ordering an account of Scott's administration of Robinson's estate. If any thing is due from that estate to Scott, Fisher is entitled to stand in his shoes; and if Scott has fairly made himself the individual proprietor of the bonds, all controversy is at an end.
I also think the court of chancery erred in directing the bonds of Bassett to be cancelled, and the deed of trust to be released. They should stand as securities for the benefit of Fisher, or of those entitled to Robinson's estate.
The only point in which, as at present advised, I am inclined to dissent from the president’s opinion, is as to the effect he gives to the grant of administration by the general court to the sheriff of Middlesex. It seems to me, that this grant was itself a nullity; and that such is the necessary consequence of considering the first grant valid. By the grant to Scott, he was constituted the complete legal owner of the estate of Robinson. He was, for the purposes of administering it, as much the *140 proprietor of the assets, as the intestate himself in his * . lifetime. No court, of equal powers over the subject matter, could transfer his rights to another, without repealing and annulling the original grant; and that grant could not be annulled but by citation in the same court, or by the action of an appellate tribunal, or in the several modes prescribed by our laws. When the general court undertook to determine, that the circumstances to give the hustings court jurisdiction did not exist, it exercised an appellate power over the acts of that court. It decided, that it had erred in its judgment as to a matter within its general jurisdiction over grants of administration ; and yet it did not and could not undertake to repeal or annul that grant. When the grant of administration was made to Scott, the jurisdiction of the court over the intestate’s estate ceased. The statute only gives power to the court to grant letters testamentary or of administration, where there is no representative of the estate capable of exercising authority over if. The very object of the law is to constitute a legal owner of chattels left without such owner; and where there is already that legal proprietor, the foundation of the court’s jurisdiction is as much taken away, as if the intestate himself was alive. The supreme court of the U. States has decided, in pursuance of these principles, that where probate of a will has been granted to an executor, no other court having general powers to grant administration, can, whilst the executor is capable of acting, transfer his powers to an administrator, but that the latter grant would be merely void, and every act done under it a nullity. Griffith v. Frazier, 8 Cranch 1. The reasoning which led the court to such conclusion, seems to me to apply strongly to this case. Here, the estate was as fully represented as if there had been an executor; and I do not perceive how a court, without repealing and annulling the former grant, could undertake to transfer the estate to the sheriff of Middlesex.
*141 Yet, as this case will go back, I do not know that it is necessary for us now to decide, to whom, if Fisher fails in establishing his rights, the money due from Bassett ought to be decreed. The court below will no doubt admit or direct such parties to be made, as are interested in that question. The sureties of Scott, and the distributees of Robinson, have a deep interest in it; and it does not follow that the court will, under all circumstances that may hereafter appear, decree the payment to the sheriff of Middlesex, even if he has the legal right to receive it, much less to Scott, who has already shewn a disposition to deal improperly with the assets.
I should, therefore, be content to reverse the decree, for the reasons indicated by the president; with directions to admit all proper parties interested in the controversy, and to have an account taken of Scott’s administration on Robert Robinso?i’s estate, in order to a final decree.
Cabell, J. expressed no opinion on the point on which the other two judges differed, probably thinking there was no necessity to decide it: but he concurred in the decree proposed by Barker, J. whereby
The decree of the circuit superiour court was reversed with costs, and the cause remanded, with directions to make new parties, and to order an account to be taken of Scott’s administration of Robinson’s estate, in order to a final decree.