# Zeigler *v.* Storey, Appellant.

*Executors and administrators—Register of wills—Decree granting letters —Collateral attack—Payment to administrator—Wills—Probate.*

If an aggrieved party desires to annul or set aside the action of the register of wills in granting letters of administration, he must pursue the course pointed out by the statute. Being a judicial officer and his decrees having the force and effect as if entered by a court, they must be regarded as conclusive until they are reversed by a direct attack made upon them in a proceeding for that purpose. They cannot be attacked or avoided in a collateral proceeding.

A bona fide payment to an administrator to whom letters had been regularly issued by an authority having jurisdiction to grant letters testamentary or of administration, is a legal discharge to the debtor.

Where letters of administration issued by the register of wills to a husband on the estate of his deceased wife, show on their face that the wife was a resident of the county at the time of her death, and possessed a personal property therein, and no fraud is shown in the grant of such letters, a payment to the administrator of the principal of a mortgage belonging to the decedent's estate is a valid payment, although a will of the decedent is subsequently discovered and probated after the date of the payment. In such a case it is immaterial whether the will was probated in another county, or in the county in which letters of administration were granted.

*Wills—Probate—Time when probate takes effect—Decree of the register.*

The probate of a will does not take effect until the register of wills enters a decree that the instrument "be admitted and recorded as the last will and testament" of the deceased. The act of the attesting witnesses appearing before the register and testifying is not a probate of the will.

Argued Feb. 11, 1908. Appeal, No. 405, Jan. T., 1907, by defendant, from judgment of C. P. Chester Co., Aug. T., 1907, No. 75, on verdict for plaintiff in case of John W. Zeigler, Administrator c. t. a. of Sarah Ann Cobourn, deceased, v. Robert Storey. Before MITCHELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ. Reversed.

Scire facias sur mortgage. Before BUTLER, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $1,500. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*George B. Johnson*, for appellant.—The appellant contends that the payment of this mortgage to the administrator of the domicile, who was also entitled to the interest for life, was a legal discharge to the debtor, whether his original letters of administration were valid, void or voidable : Kane v. Paul, 39 U. S. 33 ; Franklin v. Franklin, 91 Tenn. 119 (18 S. W. Repr. 61) ; Fisher v. Bassett, 9 Leigh, 119 ; Schluter v. Bowery Savings Bank, 5 L. R. A. 541 ; Kittredge v. Folsom, 8 N. H. 98 ; Giles v. Churchill, 5 N. H. 337; Patton's App., 31 Pa. 465 ; Monell v. Dennison, 17 How. Pr. Rep. 422 ; Gaines v. Hennen, 65 U. S. 553 ; Moore v. Tanner, 5 T. B. Mon. 42 ; Huff's Est., 15 S. & R. 39.

The discovery of the will, and the appointment of an executor, only operate as a repeal of the grant of administration, which does not avoid all mesne acts : Bigelow v. Bigelow, 4 Ohio, 138 (19 Am. Dec. 591).

If the court has jurisdiction, the regularity and sufficiency of letters of administration cannot be questioned collaterally : Williams on Ex., p. 676 ; Woerner on Adm., sec. 266 ; Plume v. Howard Savings Dist., 46 N. J. Law, 211 ; Flinn v. Chase, 4 Denio, 85 ; James v. Adams, 22 How. Pr. Rep. 409 ; Emery v. Hildreth, 68 Mass. 228 ; Wight v. Wallbaum, 39 Ill. 554 ; Riley v. McCord, 24 Mo. 265.

The Act of March 15, 1832, P. L. 135, provides that letters shall be void until the bond is filed, thus destroying any validity in the Delaware county letters prior to June 23, 1906.

In only one state in the union, that of Washington, do the letters relate back to the application, not to the bond or grant of letters, so that even in that state the letters in Chester county would be prior adjudication of domicile : Territory v. Klee, 1 Wash. 183 (23 Pac. Repr. 417).

*J. Frank E. Hause*, for appellee, filed no printed brief.

Opinion by Mr. Justice Mestrezat, March 23, 1908 :

In April, 1894, Robert Storey purchased a farm in Chester county of Henry Coburn, and in part payment of the purchase

money executed and delivered a mortgage, dated April 5, 1894, to Sarah Ann Coburn, the wife of Henry Coburn, for the sum of $1,500. The money secured by the mortgage was payable in one year after its date, and the mortgage was duly recorded in the recorder's office of Chester county. The same day the mortgage was executed, Sarah Ann Coburn assigned and transferred to her husband, Henry Coburn, " all interest now due or that may hereafter accrue and fall due upon a certain bond and mortgage bearing date the fifth day of April, A. D., 1894, . . . . from Robert Storey to me, and the principal sum due on the said bond and mortgage now being fifteen hundred dollars during the term of his natural life of said Henry Coburn." This assignment was also recorded in the recorder's office of Chester county, and the interest on the mortgage was paid annually to Henry Coburn until the death of his wife. Mrs. Coburn died at West Grove, in Chester county, on January 2, 1906, leaving to survive her her husband, a son and a granddaughter. On March 21, 1906, Henry Coburn presented his petition, under oath, to the register of wills of Chester county, setting forth that he and his wife, Sarah A. Coburn, were residents of that county and that she died in that county on January 2, 1906 ; whereupon letters of administration on her estate were duly granted to him. This was a legal adjudication that the domicile of Mrs. Coburn at the time of her death was in Chester county. The authority of the register to grant the letters is shown by the recital in the certificate issued to the administrator as follows: " Whereas, Sarah Ann Coburn, of West Grove borough, in said county, lately died intestate, having at the time of her death divers goods, chattels and credits within said county, and the power to grant letters of administration thereof is by law vested in me." On or about April 5, 1906, the principal and balance of interest due on the mortgage were paid by the defendant Storey to Henry Coburn as administrator of the mortgagee. Satisfaction of the mortgage was entered on the record thereof.

Subsequent to the satisfaction of the mortgage, two attempts to revoke the letters of administration granted to Coburn were made in Chester county by Mrs. Coburn's granddaughter, but they were ineffective, and the validity of the letters remains unimpeached.

On January 9, 1906, a will purporting to have been executed by Sarah Ann Coburn was presented to the register of wills of Delaware county. It is dated May 1, 1895, recites that the testatrix was of Delaware county, Pennsylvania, and gives her husband, Henry Coburn, $5.00 and the residue of her estate to her son. On the next day, January 10, the subscribing witnesses appeared before the register of Delaware county and testified that they saw Mrs. Coburn execute the will. No further step was taken in the matter until June 20, 1906, when the register of Delaware county entered of record a decree that, due and satisfactory proof having been made before him, " the aforegoing instrument of writing be admitted and recorded as the last will and testament of Sarah Ann Coburn, late of the township of Springfield deceased." Letters of administration with the will annexed were granted on June 23, 1906, to John W. Zeigler. On July 15, 1907, Zeigler issued a scire facias in the common pleas of Chester county on the mortgage given by Robert Storey, the defendant, to Sarah Ann Coburn. At the close of the evidence on the trial of the cause, the court directed a verdict for the plaintiff. The controlling question in the case is whether the payment to and satisfaction of the mortgage by Henry Coburn, who was entitled for life to the interest thereon, and was the original administrator of Sarah Ann Coburn in Chester county, was a payment and discharge of the debt secured by the mortgage. If it was, there can be no recovery on the scire facias issued in this case on the mortgage.

Robert Storey, the defendant, was called as a witness as if under cross-examination, and it was attempted to be shown by him that at the time he paid the mortgage to Henry Coburn, the Chester county administrator, that he, Storey, knew that Mrs. Coburn had left a will and that it had been probated in Delaware county. We have read Storey's testimony carefully and if it had been submitted to a jury, the court would not have been justified in permitting the jury to find that he knew of the existence of the will or that it had been probated in Delaware county. Storey is an old man, and from his testimony, it is apparent that he confused the will with the assignment of the mortgage by Mrs. Coburn to her husband. When he testified that Coburn had been given $1,500 by the

will of his wife, he manifestly referred to the assignment by Mrs. Coburn to her husband of the interest on the $1,500 mortgage. As the will shows, Coburn was not given a legacy of $1,500 by the will. When Storey's attention was called to the fact that he had testified that the will gave Coburn $1,500, he replied "I was bothered up then." The concluding part of Storey's examination is as follows: By Mr. Hause: "Q. Before you paid off this mortgage Henry Coburn told you that he did not get anything at all under his wife's will except $5.00, didn't he? A. No, I did not hear him say that. Q. He told you that he did not get anything under his wife's will? A. He gets the interest. By the Court: Q. Did he tell you anything about it? A. No, he did not tell me anything." By the assignment of the mortgage, Coburn was to receive the interest during his life on the $1,500, and Storey's testimony manifestly referred to the assignment and not to the will. So far as the record discloses, we must, therefore, regard Storey as being ignorant of the existence of the will at the time he made the payment to Henry Coburn, as administrator of his wife, and had the mortgage satisfied in Chester county.

The probate of wills and the granting of letters testamentary and of administration are regulated in this state by statute. Such letters are grantable only by the register of the county within which was the family or principal residence of the decedent at the time of his decease, and if he had no such residence in the commonwealth, then the register of the county where the principal part of his goods and estate are found. Before he receives his letters, an administrator is required to give a bond with two or more sufficient sureties for the faithful discharge of his duties, one of which requires him to "surrender his letters if a will of the deceased is subsequently found and proved according to law." By section 6 of the Act of March 15, 1832, P. L. 135, 2 Purd. (12th ed.), 1847, jurisdiction is conferred upon the register to probate wills and grant letters testamentary and of administration; and by section 36 of the same act, an appeal is given from all the judicial acts and decisions of the several registers of the state to the orphans' court of the proper county.

If the aggrieved party desires to annul or set aside the action of the register in granting letters of administration, he must

pursue the course pointed out by the statute. Being a judicial officer and his decrees having the force and effect as if entered by a court, they must be regarded as conclusive until they are reversed by a direct attack made upon them in a proceeding for that purpose. They cannot be attacked or avoided in a collateral proceeding. In Huff's Estate, 15 S. & R. 39, there had been no legal probate of the will and letters testamentary were erroneously procured by one Robert Peebles which were afterwards revoked by the orphans' court. That court held that as there had been no legal probate of the will and letters testamentary had been revoked, Peebles had no right to file an account. This court reversing the orphans' court said, speaking by Chief Justice TILGHMAN (p. 42): " It appears to me that receipts of money by Robert Peebles, for the debts due the decedent and payments made by him, . . . . while the probate and letters testamentary were in force, were lawful acts, in consequence of which he might be cited to settle an account before the register, or he might go in and settle it, without citation." Carpenter v. Cameron, 7 Watts, 51, was an ejectment. Letters testamentary were offered in evidence and objected to. The objection was overruled because the register's act in granting the letters was conclusive until reversed on appeal. It was held that the legality of issuing the letters could not be inquired into collaterally. In Clark v. Clark, 6 W. & S. 85 an action was brought by a wife against her husband to recover alimony, ordered to be paid by the court. The plaintiff died and her administrator was substituted. One of the defenses set up at the trial was that the plaintiff had no right to letters of administration on the estate of the deceased wife. The defense did not prevail, this court holding that in an action by the administrator against the husband, the regularity of the letters of administration could not be impeached. ROGERS, J., delivering the opinion said (p. 86): " The letters of administration were regularly granted to the plaintiff ; it is, therefore, incompetent in this suit to impeach their regularity." In Shoenberger's Estate, 139 Pa. 132, letters testamentary were issued by the register of Philadelphia county. Subsequently the register of Allegheny county, after a hearing, found that the greater portion of decedent's estate was in Allegheny county, that the letters issued in Philadel-

phia county were void, and issued letters testamentary on the estate of the deceased. This court reversed the court below, saying, inter alia (p. 141): "When application was made to the register of wills of Philadelphia, he had a right to inquire as to where the particular part of the goods and estate of the testator were situate in this state. It was a jurisdictional question which it was his duty, as well as his right, to decide. He, therefore, had jurisdiction over the subject-matter, and his decision cannot be set aside collaterally as void. . . . While his (register's), decision stands unappealed from, it is conclusive, and cannot be reversed and set aside by the decision of the register of another county."

In other jurisdictions a like conclusive effect is given to the action of a register or probate court in granting letters testamentary or of administration. In an extended note on the subject to the report of the case of Bolton v. Schriever, 18 L. R. A. 242, the editors say: "The great weight of authority is now in favor of holding an appointment of an administrator valid against collateral attack on the ground merely that the decedent was not a resident of the county, if the fact of such residence is expressly or impliedly found as a condition precedent to making the appointment." Like conclusiveness is given to the acts of a probate court in granting letters of administration in England: 1 Williams on Executors (10th English ed.), 431. The learned author says: "It is a legal consequence of the exclusive jurisdiction of the probate division in deciding on the validity of wills of personalty, and granting administration, that its sentences pronounced in the exercise of such exclusive jurisdiction should be conclusive evidence of the right directly determined."

It is held in many jurisdictions that a bona fide payment to an administrator to whom letters have been regularly issued by an authority having jurisdiction to grant letters testamentary or of administration is a legal discharge to the debtor: Kane v. Paul, 39 U. S. 33; Franklin v. Franklin, 91 Tenn. 119; Fisher v. Bassett (Va.), 33 Am. Dec. 227; Schluter v. Bowery Savings Bank (N. Y.), 5 L. R. A. 541; Moore v. Tanner (Ky.), 27 Am. Dec. 35; Steele v. Renn, 50 Tex. 467; Bigelow v. Bigelow (Ohio), 19 Am. Dec. 591; Emery v. Hildreth, 2 Gray, 225. In England the same effect is given to a pay-

ment made to a de'facto executor: Allen v. Dundas, 3 Term. Reps. 125 ; Woolley v. Clark, 5 Barn. & Ad. 744 ; 1 Williams on Executors (10th English ed), 433.  Mr. Williams says : "Upon this principle (of the conclusiveness of a decree granting letters of administration), it was decided that payment of money to an executor who has obtained probate of a forged will is a discharge to the debtor of the deceased, notwithstanding the probate be afterwards declared null in the ecclesiastical court, and administration be granted to the intestate's next of kin."

Under these well-settled principles of law we think it clear that the payment of the mortgage money by the mortgagor to Henry Coburn, the administrator of his wife in Chester county, and to whom the interest thereon was payable, was a legal discharge of the indebtedness, and that, therefore, the executor of the will of Mrs. Coburn, holding letters testamentary subsequently issued by the register of Delaware county, cannot maintain this action.  The law gave the husband the right to administer upon his wife's estate, and there is no evidence in the case to show that either he or the register of Chester county in granting the letters acted in bad faith, or with the intention of defeating the administration of Mrs. Coburn's estate under her will.  The parties had lived in Chester county, the mortgage was given to Mrs. Coburn on land situate in that county, and her assignment of it to her husband and the mortgage itself were recorded in that county. The register of Chester county was not informed, and did not know the fact, if it was a fact, that Mrs. Coburn was not a resident of Chester county at the time of her death.  He was informed by the petition of Henry Coburn, the husband, verified by oath, that both Henry Coburn and his wife were residents of Chester county, and that she died in that county. The letters issued by the register show on their face that she was a resident of Chester county at the time of her death, and was possessed of certain chattels and credits within the county. These were jurisdictional facts and authorized him to issue letters of administration to the husband of the deceased, the proper party under the statute, to receive such letters.

When demand was made by Henry Coburn for the payment of the mortgage, the letters of administration issued to him

were presented to Storey. These letters disclosed on their face the jurisdiction of the register to grant them, and authorized Coburn to demand the payment of the mortgage. So far as the record shows, Storey had no knowledge of the probate of a will, or that letters testamentary or of administration had been granted to Mrs. Coburn's estate in any other jurisdiction. He was, therefore, compelled to pay the mortgage to Coburn or subject himself to the costs of an action brought against him to recover the money. If an action had been brought by the administrator, and the facts had appeared on the trial of the cause as they did to Storey when payment was demanded of him by the administrator, Storey would have had no defense to the scire facias issued on the mortgage, and would have been compelled to pay the principal and interest due thereon. Storey, therefore, was not required under the facts of the case as disclosed to him at the time to resist payment of the mortgage. All he knew was that, the mortgagee being dead, the proper party to receive payment of the mortgage was her personal representative, duly appointed by the register of wills. There was, therefore, no reason or ground for Storey declining to pay the mortgage when Henry Coburn presented his letters of administration, granted by the register of Chester county, and demanded payment. The payment by Storey under the circumstances was a full discharge of the mortgage obligation.

It is contended on the part of the plaintiff that the letters of administration granted to Coburn in Chester county were invalid and gave him no authority to collect the money due on the mortgage because of the probate of the will of Mrs. Coburn and the granting of letters of administration thereon to the plaintiff in Delaware county. This contention rests upon a misapprehension of the facts relative to the presentation of the will to the register of Delaware county and its probate and granting of letters thereon. The will was left with the register of Delaware county on January 9, 1906, and on the following day the subscribing witnesses appeared before the register and made the usual affidavits. The register, however, did not admit it to probate at that time. There was no further action taken in regard to the will, so far as the record discloses, until June 20, 1906, when the register entered a de-

cree of record admitting the will to probate. Letters of administration were not granted until three days thereafter, on June 23. The act of the two attesting witnesses appearing before the register and testifying was not a probate of the will. The probate of a will is the judicial act of the register and is attested by his formal decree or by some official act performed by his recognizing it as probated. The testimony of the witnesses which the act of assembly requires in order to prove a will is a prerequisite to the act of the register in granting probate of it. Without such testimony, the register cannot act, but when the testimony is produced before him and he is satisfied of the sufficiency of the proof to justify the probate of will he enters a decree that the instrument " be admitted and recorded as the last will and testament " of the deceased. This is a judicial decree, and is the probate of the will. Says Duncan, J., in Logan v. Watt, 5 S. & R. 212, 214 : " The probate of a will does not mean the exhibition of the evidence on which it is admitted to be recorded, but the sentence or decree of the register. It is a decision of the judge from which an appeal lies to the register's court." In that case it was held, in ejectment, that a certificate of a register that a will of lands had been duly proved was admissible in evidence under an act of the legislature making copies of all wills and probates " good evidence to prove the gift or devise." In Loy v. Kennedy, 1 W. & S. 396, the court, after reviewing the provisions of the act of 1832 as to the register's duties, said (p. 398) : " In the performance of this duty (in probating a will), the register is a judge, and admitting the will to probate is a judicial act, and the only remedy given to the party aggrieved is an appeal to the register's court." It was held that the decree of a register cannot be impaired in a collateral issue. In Holliday v. Ward, 19 Pa. 485, it is said by Black, C. J., delivering the opinion (p. 489) : " A register is a judge, and the admission of a will to probate is a judicial decision. . . . Such judgment can only be set aside on appeal, and is unimpeachable in any other proceeding. The validity of the will is a fact which the law infers from the decision itself, of the register, and not from the evidence on which that decision was based . . . . (p. 490). His attestation may be a simple certificate that the will was proved and approved. Whether

the certificate sets out no evidence at all, or evidence insufficient, the will must be received if the register has not condemned it."

It will be observed, therefore, that the probate of Mrs. Coburn's will did not take place until June 20, 1906, and that letters of administration with the will annexed were not granted until three days thereafter. It appears from the testimony of the attorney for the defendant, who was consulted by his client about making the payment to Coburn, that the attorney went to Delaware county and examined the records there to see if any letters had been taken out on the estate of Mrs. Coburn, but found that no such letters had been issued in that county. He also made inquiry at the register's office whether any proceedings had been taken in the estate of Mrs. Coburn, and was informed that there had been none. It was in consequence of this action, that his counsel advised Storey to pay the mortgage to Coburn. At the time of the payment of the mortgage, April 5, 1906, it will be observed that the will had not been probated and letters had not been granted in Delaware county. There was, therefore, nothing to prevent the payment of the mortgage to the administrator of Mrs. Coburn in Chester county. Even if this will had been produced in Chester county and letters granted there, on the date that the probate took place in Delaware county, the payment of the mortgage by Storey to the administrator would not be invalidated. This is the rule announced in every jurisdiction, and for the reasons assigned in the numerous cases which we have already cited. The subsequent discovery of a will after the granting of letters of administration will not void or invalidate acts performed by the administrator prior to such discovery. The authority conferred by the letters granted by the register authorizes him to administer the estate, to collect moneys due and disburse them in discharge of the legal indebtedness of his decedent. Those dealing with him in good faith and by virtue of the authority contained in his letters will be fully protected. Our statute requires the register, on being advised of a will, to revoke letters of administration previously granted: Kern's Estate, 212 Pa. 57. But there is nothing in any of our decisions which warrants the conclusion that the acts of the administrator, done in pursuance of the authority granted him, are

not of valid and binding force on the executor subsequently appointed and acting under the will. The reason of the rule is that the register in granting the letters of administration acts in a judicial capacity and that his decree cannot be impeached collaterally, but if void or voidable must be attacked directly and in the manner provided in the statute. Unless such conclusiveness is given to the decree of the register and the action of the administrator appointed by it, confusion would result and no person would be safe in dealing with an administrator. A contrary doctrine would result in litigation which would be necessary to protect parties dealing with the administrator. It is apparent in the case in hand that Storey acted in the utmost good faith in paying the mortgage to Coburn, and the facts justified him in believing that Coburn was the proper legal authority to receive payment. He had known both Mr. and Mrs. Coburn. The mortgage was executed and delivered in Chester county, and covered lands situate in that county. The Coburns had resided in the county, and Storey had no information that would lead him to believe that Mrs. Coburn did not reside there at the time of her death. On the contrary, she was in that county at the time of her death, and her husband, in obtaining letters, swore that he and his wife resided there. Coburn was the proper person to administer the estate of his wife, and also the proper person to receive the interest on the mortgage. In addition to these facts, the letters of administration which were presented to Storey and his counsel before the payment of the money disclosed on their face that Mrs. Coburn at the time of her death was a resident of the county and had property and credits in that county. It would certainly be a dangerous doctrine to hold, under these facts, that the payment by Storey of the mortgage to the administrator was not a discharge of the indebtedness. Such a rule is not sustained by reason nor by any precedent to which our attention has been directed.

The assignments of error are sustained, the judgment is reversed and judgment is now entered for the defendant.